UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

ADAM HAGEMAN,

                Plaintiff,

v.

MORRISON COUNTY, SHAWN LARSEN (sheriff), SCOTT MACKISSOCK (jail administrator), TIM BRUMMER (jail programmer), JASON WORLIE (sheriff's deputy), MARK DZIEWECZYNSKI (sheriff's deputy), JOAN MUSHEL (correctional officer), JENNIFER ORTH (correctional officer), MIKE WHITLOW (correctional officer), ANDY WALTMAN (correctional officer), ETHAN WISE (correctional officer), and SHANNON ANDERSON (correctional officer),

                Defendants.

Civil No. 19-3019 (JRT/HB)

**ORDER DENYING DEFENDANTS' OBJECTIONS AND ADOPTING THE REPORT AND RECOMMENDATION**

---

Adam Hageman, OID# 251041, MCF Faribault, 1101 Linden Lane, Faribault, MN 55012, *pro se*.

Michael J. Ervin and Scott T. Anderson, **RUPP, ANDERSON, SQUIRES & WALDSPURGER, PA,** 333 South Seventh Street, Suite 2800, Minneapolis, MN 55402, for defendants.

The Magistrate Judge issued a Report and Recommendation ("R&R") recommending the Court partially deny Defendants' Motion for Summary Judgment as it related to Plaintiff Adam Hageman's First Amendment retaliation claims against Defendant Ethan Wise for a disciplinary incident and against Defendants Tim Brummer

and Scott MacKissock for an incident involving the alleged destruction of legal papers. The R&R recommended granting Defendants' motion on all of Hageman's remaining claims. Defendants object to the R&R and assert that summary judgment should be granted on Hageman's retaliation claims. Because there is sufficient evidence to create a genuine dispute of material fact and Defendants have not demonstrated that they are entitled to judgment as a matter of law on the retaliation claims, the Court will overrule Defendants' objections, adopt the R&R, and grant partial summary judgment.

## BACKGROUND

### I.   FACTUAL BACKGROUND[1]

On July 25, 2019, Morrison County jail staff booked Hageman into the jail facility. (Compl. ¶ 1, Dec. 3, 2019, Docket No. 1.) The next day, Defendant Wise placed Hageman into lockdown for refusing to follow his order to retrieve Hageman's spoon from his lunch tray so Defendant Wise could collect the tray. (*Id.* ¶ 4; Decl. Ethan Wise Supp. Mot. Summ. J. ¶ 6, July 1, 2021, Docket No. 116.) A lockdown is a disciplinary detention used in response to rules violations—such as refusing to follow an order—that separates an inmate from other inmates and permits them to leave their cell for only one hour per day. (Decl. Scott MacKissock Supp. Mot. Summ. J. ¶ 9, July 1, 2021, Docket No. 115.) Hageman

---

[1] For brevity, the Court has limited this Order's fact section to the facts relevant for Defendants' objections to the R&R. A full recitation of the facts is contained within the R&R, which the Court adopts for purposes of this Order. (R&R at 1–11, Feb. 1, 2022, Docket No. 141.)

asserts that Wise never ordered him to remove the spoon from his tray. (Decl. Adam R. Hageman Opp. Mot. Summ. J., Ex. 1 at ¶ 6, July 2, 2021, Docket No. 123.)

On July 29, Defendant MacKissock, the Morrison County Jail Administrator, met with Hageman to discuss the violation report for the spoon incident. (Compl. ¶ 4(d); MacKissock Decl. ¶¶ 1, 13.) MacKissock dismissed the lockdown for the spoon incident because, notwithstanding that Wise asked Hageman to remove the spoon, MacKissock found that it was unclear whether Wise had given Hageman a direct order to do so. (Compl. ¶ 4(d); MacKissock Decl. ¶ 13; Wise Decl., Ex. 9.) Hageman claims that later that day, Wise confirmed to him that the lockdown was retaliation for a lawsuit Hageman filed in 2018 even though Wise himself was not a defendant in that lawsuit. (Compl. ¶ 5.) Hageman further claims that during the July 29 conversation, he and Wise "talked once again as friends do; as the air had been cleared." (*Id.*)

On August 21, 2019, in a separate incident, Defendants Brummer and MacKissock met with Hageman to discuss a report of rules violations from the day before. (Compl., Ex. M at 29; Answer ¶ XII, June 25, 2020, Docket No. 18.) Brummer alone initially spoke to Hageman through his cell door and eventually slid an incident report through a gap into the cell. (Decl. Adam Hageman Opp. Mot. Summ. J., Video Ex. (20190821083800_mpg) at 08:38:12–08:39:43 am, July 20, 2021, Docket No. 133.) After several minutes, Brummer left and later returned to Hageman's cell accompanied by MacKissock. (*Id.* at 08:43:05–08:44:10 am.) MacKissock opened the cell door, spoke with

Hageman, and then closed the door and left the cell block without the report in hand. (*Id.* at 08:44:10–08:44:50 am.)

Soon after this encounter, Hageman claims he overheard MacKissock say to Brummer that "[i]f he won't give us the paper let's kill him." (Compl. ¶ 32.) It is not entirely clear from the record which paper the Defendants were allegedly referring to, but because the immediately preceding encounter involved a report of Hageman's rule violation, it is likely that the report was the paper in question. MacKissock and Brummer then returned to and entered Hageman's cell as Brummer said "[g]ive me the papers" and "[w]e are going to come in there and take it from you." (*Id.* ¶ 33.) Hageman claims Brummer grabbed an envelope that was addressed to the Minneapolis Federal Courthouse and contained a portion of the Complaint he intended to file in this case. (*Id.* ¶¶ 34–35.) Hageman asserts that the envelope "tore nearly in half" as he pulled it away from Brummer before retreating to the back of his cell. (*Id.* ¶¶ 34, 36.)

## II.   PROCEDURAL HISTORY

On December 3, 2019, Hageman filed a Complaint asserting 15 claims against 17 defendants. (*See* Compl.) The Court screened his claims pursuant to 28 U.S.C. § 1915A(a) and dismissed several claims and defendants. (R&R Prisoner's Compl. at 12, Apr. 22, 2020, Docket No. 5.; Order Adopting R&R Prisoner's Compl. at 2, June 30, 2020, Docket No. 20.) On July 1, 2021, the remaining Defendants filed a Motion for Summary Judgment as to the remaining claims. (Defs.' Mot. Summ. J., July 1, 2021, Docket No. 112.) The

Magistrate Judge issued an R&R on February 1, 2022 recommending that the Defendants' motion be granted in part and denied in part.  (R&R at 44.)  Defendants objected to the R&R and Hageman filed a response.  (Defs.' Obj. R&R, Feb. 15, 2022, Docket No. 142; Pl.'s Resp. Defs.' Obj. R&R, Mar. 1, 2022, Docket No. 145; Pl.'s Resp. Defs.' Obj. R&R, Mar. 2, 2022, Docket No. 146.)

## DISCUSSION

### I.     STANDARD OF REVIEW

After a magistrate judge files an R&R, a party may "serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b).  "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections."  *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008).  For dispositive motions, the Court reviews de novo a "properly objected to" portion of an R&R.[2]  Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3).  "Objections which are not specific but merely repeat arguments presented to and considered by a magistrate judge are not entitled to de novo review, but rather are reviewed for clear error."  *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015).

---

[2] De novo means that this Court will review the evidence and the law independently, in other words, the Magistrate Judge's prior opinion has no influence on how the Court reviews the issues.  In essence, the Court will review the case from the start, as if it is the first court to review and weigh in on the issues.

Here, the Magistrate Judge issued a recommendation on Defendants' Motion for Summary Judgment.  Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 861 (8th Cir. 2006).  A fact is material if it might affect the outcome of the lawsuit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  On a motion for summary judgment, the Court considers the facts in the light most favorable to the nonmoving party.  *Gordon*, 454 F.3d at 861 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

## II.   ANALYSIS

"'[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . on the basis of . . . constitutionally protected speech.'" *Osborne v. Grussing,* 477 F.3d 1002, 1005 (8th Cir. 2007) (quoting *Hartman v. Moore,* 547 U.S. 250, 256 (2006)).  To prevail on a § 1983 claim for retaliation in violation of the First Amendment, a plaintiff "must demonstrate (1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity." *Santiago v. Blair,* 707 F.3d 984, 991 (8th Cir. 2013).

"[U]pon a prima facie showing of retaliatory harm, the burden shifts to the defendant official to demonstrate that even without the impetus to retaliate he would have taken the action complained of." *Hartman*, 547 U.S. at 260.  When an inmate claims that a jail official retaliated for protected speech by imposing disciplinary actions, that "claim[] . . . fail[s] if the alleged retaliatory conduct [was] issued for the actual violation of a prison [or jail] rule." *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008).  The jail official need only show "some evidence" that the inmate violated a jail rule, and that he imposed the punishment in part for that violation.  *Id.*  "[A] report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker." *Id.* at 831.

### A. Actual and Compensable Injury

Defendants assert, for the first time in their objections, that Hageman failed to allege an actual, compensable injury.  A plaintiff seeking damages under § 1983 must allege an actual, compensable injury and failure to do so constitutes ground for dismissing a plaintiff's claim.  *Waters v. Madson*, 921 F.3d 725, 740 (8th Cir. 2019).

However, a party cannot, in an objection to an R&R, raise arguments that were not clearly presented to the magistrate judge. *Madol v. Dan Nelson Auto. Grp.*, 372 F.3d 997, 1000 (8th Cir. 2004); *Roberts v. Apfel*, 222 F.3d 466, 470 (8th Cir. 2000) (A party "must present all his claims squarely to the magistrate judge, that is, the first adversarial forum,

to preserve them for review.") Because Defendants failed to present this claim before the Magistrate Judge, this argument need not be considered.

Even if Defendants had properly brought this argument before the Magistrate Judge, the argument would still fail. Defendants characterize Hageman's injury as a mere filing delay and rely heavily on *Benjamin v. Kerik* for the assertion that a plaintiff must show more than a filing delay or inconvenience to establish the appropriate injury. 102 F.Supp.2d 157, 164 (S.D.N.Y 2000) *aff'd Benjamin v. Fraser*, 264 F.3d 175 (2d Cir. 2001). Although this Court is not bound by the *Benjamin* decision, Hageman's case is distinguishable. The relevant passage Defendants rely upon relates to a claim that a law library hindered an inmate's ability to pursue his legal claims. *Benjamin*, 102 F.Supp.2d at 164. Hageman's dispute arises from a First Amendment retaliation claim.

Defendants also cite to *Myers v. Hundley*, an Eighth Circuit case, to support their claim that a plaintiff must assert they "suffered an actual injury to pending or contemplated legal claims," such as "a lost, rejected, or impeded legal claim." 101 F.3d 542, 544 (8th Cir. 1996). Again, Defendants fail to acknowledge that *Meyers* involves a claim that a law library violated the right of access to the courts which is distinguishable from Hageman's First Amendment retaliation claim.

Analyzing whether the injury resulting from denial of access to a law library violates an inmate's right to access to the courts is a different inquiry than considering the injury an inmate suffers when they are allegedly retaliated against. Although the claims are

both derived from the First Amendment, direct or indirect retaliation presents a sufficiently distinct threat to an inmate's constitutional rights such that the retaliation itself may be an injury. *Munt v. Schnell*, No. 19-CV-1142 (NEB/ECW), 2020 WL 4382811, at *18 (D. Minn. July 31, 2020).

Moreover, there are numerous decisions indicating retaliation infringes upon one's First Amendment rights not only when the retaliation succeeds but even when the retaliation was simply intended to limit one's rights. *See, e.g.*, *Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1428 (8th Cir. 1986) (noting that "[i]t is not necessary that the [individual] succumb entirely or even partially to the threat as long as the threat or retaliatory act was intended to limit" an individual's rights) (quoting *Sanders v. St. Louis Cnty*, 724 F.2d 665, 666 (8th Cir. 1983)); *Zutz v. Nelson*, No. 08-0958 (JNE/RLE), 2008 WL 11463465, at *11–12 (D. Minn. Dec. 1, 2008) (noting that allegations of retaliation related to speech activities could support a First Amendment retaliation claims), *aff'd*, 601 F.3d 842 (8th Cir. 2010). Therefore, Defendants' argument would fail even if properly submitted to the Magistrate Judge.

### B. Retaliation Claim Against Wise

Defendants next object to the Magistrate Judge's determination that there was sufficient evidence for the First Amendment claim to continue against Defendant Wise. Defendants object on three bases, asserting that (1) the July 26 lockdown did not chill Hageman's First Amendment activities; (2) the July 26 lockdown was not motivated by

the exercise of constitutionally protected activities; and (3) Defendants produced "some evidence" that Hageman was punished for violating a jail rule.  The Court rejects each objection and adopts the R&R on this claim.

    **1.**    **Chilling Speech**

The second element of a prima facie First Amendment retaliation claim is that "the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity[.]"  *Santiago,* 707 F.3d at 991.  The Magistrate Judge found that the July 26 lockdown satisfied the requirements of this element.  Defendants object, asserting that the July 26 lockdown did not chill First Amendment activities because (1) Hageman and Wise cleared the air during a July 29 conversation and (2) Hageman continued to engage in First Amendment activities under a month later.

The Court is not persuaded by Defendants' arguments because the relevant inquiry is whether the adverse action would chill a person of ordinary firmness, not whether the particular plaintiff's speech was chilled.  *Santiago*, 707 F.3d at 992 (8th Cir. 2013).  A reasonable jury could find that imposing the strict deprivations of lockdown, i.e. eliminating physical interaction with other humans and confining a person to a small cell with only an hour respite per day, would chill an ordinary person from speaking.  The fact that Wise cleared the air with Hageman three days later, and that Hageman engaged in protected speech one month later, does not alter the analysis.  *See Evenstad v. Herberg*, 994 F. Supp. 2d 995, 1001 (D. Minn. 2014) ("[S]ince there is no justification for harassing

people for exercising their constitutional rights [the chilling effect] need not be great in order to be actionable.") (quoting *Bart v. Telford,* 677 F.2d 622, 625 (7th Cir. 1982).

Additionally, Defendants assert that case law indicates that a "single retaliatory disciplinary charge that is later dismissed is insufficient to serve as the basis of a § 1983 action" because this type of alleged retaliation is insufficient to "deter a person of ordinary firmness from exercising First Amendment activity in the future." *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009).  However, there has been more than a "single retaliatory disciplinary charge that [was] later dismissed." *Id.*  Defendants imposed a lockdown that eliminated physical interactions with others and confined Hageman to a small cell for most of the day.  From this evidence, a reasonable juror could conclude that Defendants' actions would chill an ordinary person from speaking.  Accordingly, the Court will overrule this objection.

### 2. Motivation

Defendants next objection asserts that the July 26 lockdown was not motivated by Hageman's First Amendment activities.  Defendants point to the facts that: (1) the lockdown was imposed before Wise knew Hageman was contemplating legal action; (2) the lockdown occurred fifteen months after Hageman filed suit and six months after the suit was dismissed; and (3) Wise was not a named defendant in the prior suit.  While these arguments favor Defendants, they are certainly not sufficient to allow the Court to resolve this issue as a matter of law.  A jury could reasonably find that the lockdown was

motivated by Hageman's First Amendment activities because Hageman claims that Wise admitted to him that the lockdown was in retaliation for the 2018 lawsuit. (Compl. ¶ 5.) While a jury may not believe that Wise admitted that the lockdown was retaliatory, this is an issue of fact for a jury to decide and is sufficient to overcome a summary judgment motion. Accordingly, the Court will overrule this objection.

### 3. The "Some Evidence" Standard

Defendants also object to the Magistrate Judge's finding that MacKissock's dismissal of the July 26 violation prohibits the violation from satisfying the "some evidence" standard.

If alleged retaliatory conduct was issued for the violation of a rule, the jail official need only show "some evidence" that an inmate violated a rule and that the punishment was imposed in part for the violation. *Hartsfield*, 511 F.3d at 829. A report from a correctional officer legally suffices as "some evidence" upon which to base a disciplinary violation if the violation is found by an impartial decisionmaker. *Id.* at 831. The Magistrate Judge found that the Defendants failed to meet the "some evidence" standard because MacKissock dismissed the violation that led to the lockdown and there was therefore no impartial decisionmaker to ratify the violation.

Defendants now argue that the dismissed violation constitutes "some evidence" supporting Wise's decision to impose the July 26 lockdown because the violation was dismissed on technical grounds. Specifically, Defendants assert that MacKissock

dismissed Wise's violation because "it wasn't 100% clear" that Officer Wise had "directly ordered" Hageman to remove the spoon rather than simply requesting it. (MacKissock Decl. ¶ 13.)

Even if the dismissal was only technical, Defendants do not satisfy the "some evidence" standard as a matter of law because the violation was not found by an impartial decisionmaker. A "technical" dismissal does not change the fact that the violation was not upheld by an impartial decisionmaker because there was insufficient evidence to establish that Hageman disobey an order. Accordingly, Defendants have failed to satisfy the "some evidence" standard and their objection is overruled.

### C. Retaliation Claim Against Brummer and MacKissock

Defendants lastly object to the Magistrate Judge's finding that Hageman can maintain his First Amendment retaliation claim against Brummer and MacKissock. Defendants argue that (1) confiscation of legal papers is not a basis for a claim; and (2) Defendants are protected by qualified immunity. The Court rejects each of these objections and adopts the R&R.

#### 1. Confiscation of Legal Papers

Defendants first argue that the Court has already found that the confiscation of legal papers is an insufficient injury when dismissing one of Hageman's claims at the outset of this action. (R&R Prisoner's Compl. at 6.) However, the claim the Court was addressing was the denial of access to the courts which, as discussed above, is a separate inquiry from First Amendment retaliation. (*Id.*)

Defendants also assert that Hageman's claim is insufficient under *Gay v. City of Philadelphia*, which held that allegations that prison officials "threatened to confiscate or destroy . . . legal materials, without more, fail to state a cause of action because plaintiff suffered no adverse action." 2005 WL 1844407, at *5 (E.D. Pa. Aug. 2, 2005). Unlike *Gay*, Hageman's claim goes beyond mere threats because he alleges that that Defendants grabbed his legal materials, resulting in some of the materials being ripped in half. Whether this occurred or not is a question of fact for the jury. Accordingly, the Court will overrule Defendants' objection.

### 2. Qualified Immunity

Although Defendants asserted the doctrine of qualified immunity in relation to Hageman's claim that some of the Defendants burdened his exercise of religion, Defendants now seek to assert, for the first time in their objections, that they are protected by qualified immunity on the First Amendment retaliation claim. A party "must present all his claims squarely to the magistrate judge, that is, the first adversarial forum, to preserve them for review." *Roberts*, 222 F.3d 470. Because Defendants failed to present this argument before the Magistrate Judge, this Court need not consider it.

## CONCLUSION

Defendants fail to establish that summary judgment should be granted on Hageman's remaining claims. Accordingly, the Court overrules Defendants' objections,

adopts the Magistrate Judge's R&R, and grants in part and denies in part Defendants' Motion for Summary Judgment.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Objection to the Report and Recommendation [Docket No. 142] is **OVERRULED**;

2. The Magistrate Judge's February 1, 2022 Report and Recommendation [Docket No. 141] is **ADOPTED**;

3. Defendants' Motion for Summary Judgment [Docket No. 112] is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. The Motion is **DENIED** as to the First Amendment retaliation claim against Wise arising from the spoon incident lockdown; and

    b. The Motion is **DENIED** as to the First Amendment retaliation claim against Brummer and MacKissock arising from the alleged attempt to seize Hageman's legal papers.

    c. The Motion is **GRANTED** on all remaining claims.

-16-

DATED: March 28, 2022
at Minneapolis, Minnesota.

                              JOHN R. TUNHEIM
                              Chief Judge
                              United States District Court